# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM KLEIN, Individually And On Behalf Of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>        v.<br><br>CABELA'S INCORPORATED, JAMES W. CABELA, THEODORE M. ARMSTRONG, MICHAEL R. MCCARTHY, JOHN H. EDMONDSON, BETH M. PRITCHARD, THOMAS L. MILLNER, JAMES F. WRIGHT, PETER S. SWINBURN, DENNIS HIGHBY, and DONNA M. MILROD,<br><br>                Defendants. | Case No. _____<br><br>Judge<br><br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934, AND RULE 14A-9**<br><br>**JURY DEMAND** |

Plaintiff Adam Klein ("Plaintiff"), by and through his undersigned counsel, brings this shareholder class action on behalf of himself and all other similarly situated public shareholders of Cabela's Incorporated ("Cabela's" or the "Company") against Cabela's and the members of the Company's board of directors (collectively, the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78n(a) and 78t(a) respectively, and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between Cabela's and Bass Pro Group, LLC ("Bass Pro"). Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1. On October 3, 2016, Cabela's and Bass Pro jointly announced that it had reached a definitive Agreement and Plan of Merger (the "Original Merger Agreement") where Bass Pro would acquire Cabela's for $65.50 per share (the "Original Merger Consideration"), representing a transaction value of approximately $5.5 billion (the "Original Proposed Merger").

2. On April 17, 2017, Cabela's and Bass Pro amended the Original Merger Agreement (the "Merger Agreement") in which the Original Merger Consideration was lowered to $61.50 per share of Cabela's (the "Merger Consideration"), representing a transaction value of $5 billion.

3. Defendants have violated the above-referenced Sections of the Exchange Act by filing a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") filed with the SEC on June 5, 2017 (the Proxy is dated June 3, 2017). The Board recommends that Cabela's shareholders vote in favor of approving the Proposed Merger at the forthcoming shareholder special meeting, and agree to exchange their shares pursuant to the terms of the Merger Agreement based on, among other things, the factors examined by the Board to make its recommendation and the opinion rendered by the Company's financial advisor, Guggenheim Securities, LLC ("Guggenheim").

4. The Merger Consideration and the process by which Defendants agreed to consummate the Proposed Merger are fundamentally unfair to Cabela's public shareholders in view of the Company's recent financial success and prospects for future growth.

5. To ensure the success of the Proposed Merger, the Board issued the Proxy, which fails to provide shareholders with all material information necessary for them to assess the fairness of the Merger Consideration. In particular, the Proxy fails to disclose: (1) certain material projections for Cabela's, including a reconciliation of the non-GAAP (generally accepted

accounting principles) projections to the most directly comparable GAAP measures and the line items used to calculate the non-GAAP measures, and (2) a fair summary of the financial analyses performed by Guggenheim.

6. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from proceeding with the shareholder vote, currently set for July 11, 2017 on the Proposed Merger, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations Sections 14(a) and 20(a) of the Exchange Act.

7. Thus, it is imperative that the relief requested herein be granted prior to special meeting to ensure that Cabela's stockholders can make an informed decision on how to vote their stock regarding the Proposed Merger.

**PARTIES**

8. Plaintiff is, and has been at all relevant times, a shareholder of Cabela's common stock.

9. Defendant Cabela's is a Delaware corporation, with its principal executive offices located at One Cabela Drive, Sidney, Nebraska 69160. Cabela's is a retailer of hunting, fishing, camping, and outdoor sports products and apparel. Cabela's is listed on the New York Stock Exchange under the symbol "CAB".

10. Individual Defendant James W. Cabela is a Co-Founder of the Company and has served as the Chairman of the Board since June 2013 and a director since 1965.

11. Individual Defendant Theodore M. Armstrong has served as a director of the Company since December 2004.

12. Individual Defendant Michael R. McCarthy has served as a director of the Company since 1996.

13. Individual Defendant John H. Edmondson has served as a director of the Company since October 2007.

14. Individual Defendant Beth M. Pritchard has served as a director of the Company since March 2011.

15. Individual Defendant Thomas L. Millner has served as a director of the Company since April 2009.

16. Individual Defendant James F. Wright has served as a director of the Company since April 2015.

17. Individual Defendant Peter S. Swinburn has served as a director of the Company since August 2015.

18. Individual Defendant Dennis Highby has served as a director of the Company since July 2003.

19. Individual Defendant Donna M. Milrod has served as a director of the Company since February 2014.

20. The Board and Cabela's may collectively be referred to as "Defendants." Each of the Individual Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

22.     Personal jurisdiction exists over each Defendant either because the Defendant is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; and (ii) Cabela's is incorporated in this District.

24.     Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the other public shareholders of Cabela's (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable.  As of June 2, 2017, there were approximately 68,911,660 issued and outstanding shares of Cabela's common shares.  All members of the Class may be identified from records maintained by Cabela's or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

27.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act and SEC Rules and Regulations including Rule 14a-9; (ii) whether the Director Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer

irreparable harm if compelled to vote their units regarding the Proposed Transaction based on the false and/or misleading Proxy.

28. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class, Plaintiff have the same interests as the other members of the Class, and Plaintiff do not have any interests that are adverse to the Class. Accordingly, Plaintiff is adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

31. Founded in 1961, Cabela's is a merchandiser of hunting, fishing, camping, and outdoor sports products and apparel, in which it retails through its brick and mortar stores as well as online. The Company is headquartered in Sidney, Nebraska.

32. On October 3, 2017, Cabela's and Bass Pro issued a joint press release announcing the Proposed Merger. Concurrently with entering into the Original Merger Agreement, Cabela's also entered into a Sale and Purchase Agreement (the "Bank Purchase Agreement"), in which Cabela's agreed to sell World's Foremost Bank ("WFB"), a wholly-owned subsidiary of Cabela's

6

that operated its credit card program as well as held traditional bank deposits, to Capital One, National Association ("Capital One") (the "Bank Transaction"). The Proposed Merger was conditioned on the successful consummation of the Bank Transaction.

33. Shortly thereafter, Capital One informed the Company that it was unlikely that the Office of the Comptroller of the Currency ("OCC") would approve the Bank Transaction by the outside date set forth in the Original Merger Agreement, October 3, 2017. Capital One's concerns stemmed from an anti-money laundering order (the "AML Consent Order") it had entered into with the OCC on July 10, 2015, which required Capital One to make certain undisclosed remediation efforts.

34. Over the next several months, the Company continued negotiating with Capital One. Ultimately, the parties agreed to a revised structure of the Bank Transaction in which another financial institution, Synovus Bank ("Synovus"), would acquire the majority of WFB and then sell the credit-card related business to Capital One. As a result of this revised structure, the Company agreed to lower the Original Merger Consideration to $61.50 per share, or approximately $275 million in aggregate value.

35. Most interesting, during the time the Company was attempting to salvage the Proposed Merger, a new set of projections, discussed further below, were developed which lowered the Company's future earnings substantially.

36. On April 17, 2017, the Board held a meeting regarding the revised transaction structure. Despite Cabela's shareholders having nothing to do with the issues related to the Bank Transaction, i.e., – the Company's failure to properly conduct due diligence regarding Capital One's ability to consummate the original deal and Capital One's own overly optimistic views on

7

consummating the original deal, the Board unanimously approved the revised transaction structure. A press release announcing the new deal was released shortly after.

**The Incomplete and Materially Misleading Proxy**

37. On June 5, 2017, Defendants filed the materially incomplete and misleading Proxy with the SEC. The information contained in the Proxy has been disseminated to Cabela's shareholders to solicit their vote in favor of the Proposed Merger. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

38. First, the Proxy discloses two sets of financial projections, a set from February 2016 (the "2016 projections") and a set from March 2017 (the "2017 Projections") (collectively, the "Cabela's Projections"). Proxy at 86. However, the Proxy indicates that the projections include non-GAAP financial measures including EBITDA, net income, and unlevered free cash flow, but fails to reconcile these non-GAAP metrics found in each set of projections to each of the financial metrics' most comparable GAAP metric as required.

39. Moreover, Guggenheim based its calculation of unlevered free cash flows on the Cabela's Projections. Despite this reliance, the Proxy defines unlevered free cash flows by referencing several undisclosed financial metrics and line items, including tax-effect EBIT, depreciation and amortization, capital expenditures, and change in net working capital and other assets. Moreover, the Proxy fails to reconcile unlevered free cash flows to its most comparable GAAP metric. Stockholders must be informed as to their specific differences (e.g. stock-based

8

compensation) between the non-GAAP metrics disclosed and utilized by the Board and Guggenheim. The failure to reconcile and explain these differences renders the Cabela's Projections in the Proxy false and misleading.

40. When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method), of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

41. Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as the Company has included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-*

42. Over the past year, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

43. In order to make the projections included on page 86 of the Proxy not materially complete and not misleading, Defendants must provide a reconciliation table of all disclosed non-GAAP measures to the most comparable GAAP measures. In fact, the Defendants acknowledge the materially incomplete and misleading nature of said non-GAAP measures in the Proxy: "Non-GAAP financial measures should not be considered in isolated form or as a substitute for financial information presented in compliance with GAAP, and non-GAAP financial measures as used by the Company may not be comparable to similarly titled financial measures used by other companies." Proxy at 85-86. Despite disclosing the misleading and materially incomplete nature

---

*GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2]   *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited 03/06/2017).

[3]   *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm. (last visited 03/06/2017)

of non-GAAP financial measures, Defendants fail to reconcile the non-GAAP measures disclosed in the Proxy.

40. The Proxy also fails to provide sufficient information for shareholders to assess the valuation analyses performed by Guggenheim in support of its fairness opinions.

41. With respect to Guggenheim's *Discounted Cash Flow Analysis*, the Proxy fails to disclose a reconciliation of unlevered free cash flows to its most comparable GAAP metric, the rationale for using an extremely narrow range of perpetuity growth rates, 1.75% to 2.25%, which is well below the historical gross domestic product growth rate and historical inflation. As a result of these omissions, shareholders are unable to assess whether Guggenheim's discounted cash flow analysis---generally considered the most useful analysis---should be considered in deciding whether or not to vote. The omission of such information renders the summaries of these valuation analyses and the ranges of implied share price on page 77 of the Proxy misleading.

42. With respect to Guggenheim's *Selected Precedent Transaction Analysis*, the Proxy fails to disclose the mean and median multiples for both LTM EBITDA and NTM EBITDA. As a result of these omissions, shareholders are unable to determine whether the reference multiple ranges selected by Guggenheim for both LTM EBITDA and NTM EBITDA are reasonable. The omission of this information renders the analysis on pages 77-78 of the Proxy materially misleading.

43. With respect to Guggenheim's *Selected Public Companies Analysis*, the Proxy fails to disclose the median for either the Enterprise Value/EBITDA multiple or the Stock Price/EPS multiple. Without this information, shareholders are unable to determine whether the reference multiple ranges selected by Guggenheim were reasonable, i.e. – whether the individual multiples

observed were skewed up or down. The omission of this information renders the analysis on pages 79-80 of the Proxy materially misleading.

44. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I
### Claim for Violations of Section 14(a) of the
### Exchange Act Against All Defendants

45. Plaintiff repeats and realleges each allegation set forth herein.

46. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

47. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

12

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48. SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a). As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

49. The omission of information from a Proxy violates Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

50. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company and (ii) the valuation analyses performed by GUGGENHEIM.

51. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

52. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Guggenheim reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Guggenheim as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company.

53. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

54. Cabela's is deemed negligent as a result of the Individual Defendants' negligence in preparing, reviewing and filing the Proxy.

55. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

56. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### Claims for Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

57. Plaintiff repeats and realleges each allegation set forth herein.

58. The Individual Defendants acted as controlling persons of Cabela's within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Cabela's, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore misleading.

59. Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. Thus, the

Individual Defendants were intimately connected with and directly involved in the making of this document.

61.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above, which has been omitted from the Proxy;

C.     Rescinding, to the extent already implemented, the Proposed Merger or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.     In the event Defendants consummate the Proposed Merger, awarding damages to Plaintiff and the Class;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 7, 2017

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

**FARUQI & FARUQI, LLP**

By: */s/ Michael Van Gorder*
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*